BENNET D. ZUROFSKY
Attorney at Law
17 Academy Street, Suite 1201
Newark, New Jersey 07102
Phone:  973-642-0885
Fax:  973-642-0946
E-mail:  bzurofsky@zurofskylaw.com
Attorneys for Defendant
   Pension Strategies, L.L.C.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| DANI BAR-DAVID, MICHAL BAR-DAVID and OCTAL CORPORATION, | CASE NO. _____ |
|---|---|
| Plaintiffs, | |
| v. | |
| ECONOMIC CONCEPTS, INC., KENNETH HARTSTEIN, NATI FINANCIAL, LLC, AMIR ABRAMOV, ARTHUR D. SHANKMAN & CO., ARTHUR D. SHANKMAN, PENSION STRATEGIES, LLC, and DAVID BURKE, | |
| Defendants. | |

NOTICE OF REMOVAL TO U.S. DISTRICT COURT
of SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:  ESSEX COUNTY
DOCKET NO: L-6811-13
AND MEMORANDUM IN SUPPORT THEREOF

6526.15.731652.1

PLEASE TAKE NOTICE that defendant Pension Strategies, L.L.C., an Arizona limited liability company ("Pension Strategies"), hereby removes to this Court, pursuant to 28 U.S.C. §§1331, 1441(b), and 1446(a) and (b), the state court action described below:

1. On or about August 28, 2013, an action was commenced in the Superior Court of the State of New Jersey, Essex County Law Division styled above, being docket no. L-6811-13 (the "Action"). A copy of the Complaint is attached as **Exhibit A**.

2. Pension Strategies was first served with a copy of the Complaint on September 9, 2013. The thirty days since Pension Strategies was served with a copy of the Complaint have not yet expired.

3. The Action is a civil action of which this Court has original jurisdiction under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331, and is one which may be removed to this Court pursuant to 28 U.S.C. §§1331, 1441(b), and 1446(a) and (b), on two separate and independent grounds. First, the Action arises under, and asserts claims falling within the scope of, the exclusive civil enforcement provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.* Second, the Action poses one or more substantial federal questions, involving the federal tax laws and related ERISA provisions, that appear on the face of the Complaint.

4. **Removal Based on ERISA:** Pension Strategies removes the Action based on ERISA in light of the Complaint's allegations, which are not admitted but are restated here only for purposes of establishing removal jurisdiction:

    a. The Complaint, which expressly refers to an ERISA plan and asserts violations of ERISA, yet attempts to allege artfully-pled state law claims relating to the establishment, implementation and funding of an ERISA-covered pension plan.

    b. The key plan at issue – commonly called a "412(i) plan" – is an ERISA-covered defined benefit pension plan that is funded exclusively by the plan's purchase of life insurance contracts or annuities. (Complaint, ¶¶ 3, 7, 11, 12). A 412(i)

plan is governed both by ERISA and by Section 412, subsections (h) and (i), of the Internal Revenue Code (the "Code"), 26 U.S.C. §412(h), (i).[1]  Section 412(h) exempts qualified defined-benefit pension plans from the minimum funding standards of ERISA (29 U.S.C. §§1081-1086) and the Code (26 U.S.C. §412(h)).  The ERISA counterpart to Section 412 is 29 U.S.C. §1081, with subsection (a)(2) exempting an "insurance contract plan" described in subsection (b) from ERISA's minimum funding standards.  The minimum funding standards include the minimum funding standard account, the requirements of quarterly contributions by the employer and deficit reduction contributions, the use of reasonable actuarial assumptions, and an enrolled actuary certification, which is required on Schedule B with the pension plan's Form 5500, Annual Return/Report.  Section 412(h) is limited to a "plan [which] is funded exclusively by the purchase of individual insurance contracts" and meets certain requirements in §412(i), subparagraphs (2) through (6).[2]  A 412(i) plan, in general, is subject to all of ERISA's other provisions applicable to defined benefit pension plans.

      c.    The Complaint's claims clearly fall within ERISA's broad preemptive scope in 29 U.S.C. §1144(a) and its exclusive civil enforcement provisions in §1132(a).  ERISA preempts, provides exclusive civil enforcement mechanisms, and allows removal of state law claims (such as the present ones) that seek to redress, through state law means, violations of rules that the civil enforcement scheme in §1132(a) was designed to enforce.  In applying ERISA, the courts "recharacterize" claims which fit within ERISA's civil enforcement provisions as federal claims from the inception, and

---

[1] Since the establishment of the plan at issue herein, the Code has been revised and reorganized. For purposes of clarity, Pension Strategies shall refer to those Code provisions applicable and in force at times relevant to the Complaint.

[2] Additionally, plans "funded exclusively by the purchase of group insurance contracts which [are] determined under regulations prescribed by the Secretary [of the Treasury] to have the same characteristics as [such individual contracts] shall be treated as a plan described in [Section 412(i)]." 26 U.S.C. §412(i).

thus as claims "arising under" federal law.  Hence, removal of the Action to federal court is proper under 28 U.S.C. §1446(b).  *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65-66 (1987).

    d. Specifically, the Complaint alleges that defendants Shankman and Abramov approached Plaintiffs and recommended that Plaintiffs implement a defined benefit pension plan.  (Complaint ¶¶ 39-44).  The Complaint alleges that, in late 2003, Plaintiffs established a 412(i) defined pension plan (referred to as the "Octal 412(i) Plan" or the "Plan").  (Complaint ¶49).[3]

    e. The Octal 412(i) Plan is an ERISA-covered employee pension benefit plan.  29 U.S.C. §1002(2).  Plaintiffs Dani Bar-David and Michal Bar-David are the "plan sponsors" and believed to be the sole trustees of the Plan and, therefore, are fiduciaries thereto.  29 U.S.C. §1002(16)(B), 16(A), and (21)(A).  Plaintiffs Dani Bar-David and Michal Bar-David are covered by the Plan and, therefore, are ERISA plan "participants."  29 U.S.C. §1002(7).  (Complaint ¶ 2).  Defendant Nati Financial, LLC is alleged to have sold certain life insurance policies to the Plan.  (Complaint ¶ 10).  The Complaint alleges that Defendants Shankman, Abramov, Harstein, Economic Concepts, Inc. and Burke were all selling agents who designed the Plan to maximize insurance commissions that were shared by all of them. (Complaint ¶¶ 2, 45, 47).

    f. The Complaint alleges that the Plan was intended to be a defined benefit pension plan created under Section 412(i) of the Code but that it was not validly funded or otherwise in compliance.  (Complaint ¶ 51).  The Complaint further alleges that the IRS had disallowed deductions claimed by Octal, that it was not advised to report the plan as a "listed transaction" and has suffered financial losses as a result thereby, including penalties and interest to the IRS.  (Complaint ¶¶ 10, 52-54).

---

[3] The documents affixed to the Complaint reflect that the Plan documents were authorized by Octal Corporation on September 17, 2003.  This date is significant because it predates the formation of Pension Strategies and thus undercuts the veracity of any of the claims asserted against it.

g. Under ERISA, the life insurance policies, which are alleged to have provided the funding for the Octal 412(i) Plan, are Plan assets. The Complaint alleges these assets are "springing cash value" life insurance policies whose sale to the Plan involved improper transactions, as defined under ERISA, in violation of IRS regulations. (Complaint ¶¶ 37, 47). The Complaint alleges that "All Defendants owed Plaintiffs a fiduciary duty to recommend a suitable investment . . . relating to their investment in their 412(i) plan." (Complaint ¶ 76). Plaintiffs allege that the Defendants "breached both common law and statutory fiduciary duties to Plaintiffs which were the "producing cause of Plaintiffs' damages." (*Id.*) Thus, while the Complaint contains numerous allegations pertaining to the creation of the Plan, Plaintiffs' causes of action rest on allegations that the Defendants owed continuing duties to the Plan *after* the Plan was established, particularly with regard to the funding of the Plan, filing of documents pertaining thereto, and the tax deductions subsequently claimed.

h. Thus, the Complaint alleges violations of ERISA which occurred after the Plan was established, if at all, such as ERISA's prohibited transaction rules. Specifically, the Complaint seeks damages based on duties allegedly owed to the Plan after its creation, including (1) damages for violations of ERISA allegedly arising from IRS actions *after* the year in which the Octal 412(i) Plan was established and funded.

i. The causes of action asserted in the Complaint, in whole or in part, arise under ERISA and fall within the scope of ERISA's exclusive civil enforcement scheme. The Complaint makes numerous references to violations of ERISA's prohibited transaction rules, it alleges all of the Defendants engaged in these prohibited transactions, and it seeks damages as a result of these alleged violations. (Complaint ¶¶ 63, 66). ERISA regulates, through its "prohibited transaction" rules and class exemptions, both the sale of life insurance policies to an ERISA plan,[4] and the sale by a defined benefit

---

[4] 29 U.S.C. §1106(a)(1)(A) and (D); Department of Labor Prohibited Transaction Exemption 84-24 (Apr. 3, 1984), 49 Fed. Reg. 13208-13 (1984).

plan of an individual life insurance policy to a plan participant who is the insured under the policy.[5] A "prohibited transaction" is exclusively a federal concept; it *is* a term of art found in ERISA, 29 U.S.C. §1106, entitled "Prohibited transactions." ERISA bars "prohibited transactions" in its fiduciary responsibility rules, §1106(a), including certain transactions between a plan and a "party in interest" as defined in §1002(14); and its exclusive civil enforcement provisions in §1132(a)(2) and (3) provide remedies for violations of the "prohibited transaction" rules. Under §1132(a)(3), a fiduciary may bring a suit for equitable relief based on a "prohibited transaction" against either a fiduciary or against a nonfiduciary "party in interest" who has actual or constructive knowledge of the circumstances rendering the transaction unlawful.[6]

        j.      The Complaint alleges the Defendants represented to Plaintiffs that the Octal 412(i) Plan was in compliance with the law and qualified as a 412(i) plan. Thus, the Complaint expressly alleges the Defendants violated ERISA through misrepresentations as to the legality of the Plan's terms and benefits, and seeks consequential damages therefor. *See also Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287-1288 (11th Cir. 2011) ("Plaintiffs here assert that IPS failed to disclose information related to the Plan – an ERISA violation – and abrogated its fiduciary obligations, which arise from the relationship established by the Plan and IPS's duties under ERISA.")

        k.      All of these claims fall within the scope of ERISA's exclusive civil enforcement provisions for equitable relief in §1132(a)(3). Section 1132(a)(3) is a broad, catch-all equitable relief provision. It authorizes a suit by a fiduciary, such as the

---

[5] 29 U.S.C. §1106(a)(I)(A) and (D); Prohibited Transaction Exemption 92-6 (Feb. 12, 1992), 57 Fed. Reg. 5189, amended, 67 Fed. Reg. 56,313 (Sept. 3, 2002).

[6] *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 249-253 (2000). The Complaint refers to Pension Strategies as only the plan administrator (Complaint ¶ 50). As a third party administrator, it is not a fiduciary to the Plan.

individual Plaintiffs, to "(A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  This is precisely the relief sought by and through the Complaint.

l. Under New Jersey law, traditionally, for a fiduciary duty to exist, one must hold the property of another for the benefit of another. *In re Cendant Corporation Securities Litigation* (N.J. Dist.Ct., 2003), *citing Simons v. Coga*, 549 A.2d 300 (Del. 1988) ("Before a fiduciary duty arises, an existing property right or equitable interest supporting such a duty must exist.").  "A mere expectancy interest does not create a fiduciary relationship . . . [because] [b]efore a fiduciary duty arises, an existing property right or equitable interest supporting such a duty must exist."  Specifically, Plaintiffs allege that the Defendants had a duty to exercise the good faith in all aspects of the transaction with the Plaintiffs (including, presumably <u>post-sale events such as the continuing payment of premiums, and for filing of documents with respect to the Plan's continued IRA and Department of Labor compliance</u>).  (Complaint ¶ 61).  Likewise, Plaintiffs allege, in Count Third, that each and every Defendant breached their fiduciary duties owed to the Plaintiffs and that such breach was the direct cause of Plaintiff's damages.  (Complaint ¶¶ 63-66, 75-77).  Accordingly, Plaintiffs seek relief for the Defendants' alleged breach of duties.

m. The United States Supreme Court has made clear that claims seeking relief for breach of fiduciary duties fall within ERISA's broad preemptive scope:

> As we explained in *Russell*, and in more detail in our later opinion in *Varity Corp. v. Howe*, 516 U.S. 489, 508-512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), §502(a) of ERISA identifies six types of civil actions that may be brought by various parties.  The second, which is at issue in this case, authorizes the Secretary of Labor as well as plan participants, beneficiaries, and fiduciaries, to bring actions on behalf of a plan to recover for violations of the obligations defined in §409(a).  The principal statutory duties imposed on fiduciaries by that section "relate to the proper management, administration, and

investment of fund assets," with an eye toward ensuring that "the benefits authorized by the plan" are ultimately paid to participants and beneficiaries. *Russell*, 473 U.S., at 142, 105 S.Ct. 3085; *see also Varity*, 516 U.S., at 511-512, 116 S.Ct. 1065 (noting that §409's fiduciary obligations "relat[e] to the plan's financial integrity" and "reflec[t] a special congressional concern about plan asset management"). The misconduct alleged by the petitioner in this case falls squarely within that category.

*LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 253, 128 S.Ct. 1020, 1024, 2008 WL 440748, *3 (2008).

        n.    With respect to 412(i) plans, the Eleventh Circuit Court of Appeals recently found claims such as those asserted in the instant Complaint are completely preempted by ERISA's broad remedial force. *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287-1288 (11th Cir. 2011). As here, the plaintiffs in *Lamb* sought relief from adverse tax consequences pertaining to the funding of a 412(i) defined benefit plan:

> Plaintiffs argue that their claims against IPS concern the design and repair of the Plan, not IPS's ERISA-regulated duties such as management and administration of the Plan. It is true that some of plaintiffs' assertions do not fall under the umbrella of ERISA, but their allegations of breach of fiduciary duties and failure to make required disclosures are clearly potential claims under 29 U.S.C. §1109(a)….
>
> * * *
>
> …in *Borrero v. United Healthcare of N.Y., Inc.*, appellants argued that their contractual duties were defined by state law, but this court found that even though the appellants' assertion was "true in the abstract," "the content of the claims necessarily require[d] the court to inquire into aspects of the ERISA plans because of the invocation of terms defined under the plans." 610 F.3d 1296, 1304 (11th Cir.2010). This court held that if some of a party's claims "implicate legal duties dependent on the interpretation of an ERISA plan," the claims are completely preempted. *Id*. at 1304–5.
>
> Plaintiffs here assert that IPS failed to disclose information related to the Plan– an ERISA violation – and abrogated its fiduciary obligations, which arise from the relationship established by the Plan and IPS's duties under ERISA. Like the claims in Borrero, the "legal duty implicated is dependent upon an ERISA plan." *Id*. at

> 1304. Because there is federal question jurisdiction over these claims, supplemental jurisdiction provides us with subject matter jurisdiction over the remaining claims. See *id*. at 1304–05.

*Id.,* at 1287-1288.

o. Where, as here, a state law claim falls within the scope of ERISA's civil enforcement provisions, ERISA completely preempts the claim, creating removal jurisdiction, regardless of whether the claim would be conflict-preempted by 29 U.S.C. §1144(a). *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004); *Arana v. Ochsner Health Plan,* 338 F.3d 433, 439-440 (5th Cir. 2003). The "complete preemption" doctrine under ERISA (also known as field preemption) includes state law claims that seek to provide remedies for alleged misconduct growing out of the design, marketing, sale, establishment, implementation, funding or administration of ERISA plans,[7] including state law claims falling within the scope of ERISA's civil enforcement provisions for "prohibited transactions." *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson,* 201 F.3d 1212, 1221-1223 (9th Cir. 2000). ERISA also completely preempts state law claims that are utilized to "provid[e] alternate enforcement mechanisms" for ERISA rights.[8]

---

[7] *Hall v. Blue Cross/Blue Shield of Alabama,* 134 F.3d 1063, 1064-65 (11th Cir. *1998); American Fed. of Unions, Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.,* 841 F.2d 658, 666 (5th Cir. 1988); *Tingey v. Pixley-Richards West, Inc.,* 953 F.2d 1124, 1130-31 (9th Cir. 1992); *Olson v. General Dynamics Corp.,* 960 F.2d 1418, 1423 (9th Cir. 1991), *cert. denied,* 504 U.S. 986 (1992)*; Dytyrt v. Mountain State Tel. & Telegraph Co.,* 921 F.2d 889, 897 (9th Cir. 1990); *Northwestern Mutual Life Ins. Co. v. Resolution Trust Corp.,* 848 F. Supp. 1514, 1520-21 (N.D. Ala. 1994).

[8] *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 658 (1995). A suit need not be a winning claim under ERISA's civil enforcement provisions in order for there to be removal jurisdiction. *See, e.g., Plumbing Indus. Bd. v. E. W. Howell Co.,* 126 F.3d 61, 69 (2d Cir. 1997) (holding a state cause of action that serves as an alternate means of vindicating the rights protected by §1132(a) is within that section's scope and thus removable even if the suit is directed at a defendant which is not liable under ERISA); *Rutledge,* 201 F.3d at 1222 n. 13 (ERISA completely preempts state law claims for money damages, even though the only remedy ERISA provides for a "prohibited transaction" is

p.      ERISA is one of only three federal acts that "field" preempt state law. The other federal acts include the Labor Management Relations Act and the National Bank Act. *See* 25 U.S.C. §185; *see also* 12 U.S.C. §§1, 2, 3, 4, 8, 11, 12, 13, 14, 21, 22, 23, 24, 26, 27, 29, 35, 39, 52, 53, 56, 57, 59, 60, 61, 62, 66, 71, 72, 73, 74, 75, 76, 81, 84, 85, 86, 90, 91, 93, 94, 141, 142, 143, 144, 161, 165, 181, 182, 192, 193, 194, 196, 481, 482, 483, 484, 485, 541, 548; 19 U.S.C. §197; 31 U.S.C. §543.38). However, ERISA's preemptive impact is far more all-encompassing, and is much broader and/or sweeping, than other federal acts. Section 514 of ERlSA provides that ERlSA supersedes any and all state laws insofar as they relate to any employee benefit plan. ERISA §514(a). The breadth of this provision is clear in the definition of "state laws" which includes "all laws, decisions, rules, regulations, or other state actions having the effect of law, of any state." ERISA §514(c)(l). "State" is defined as "a state, any political subdivision thereof, or any agency or instrumentality of either which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by ERISA." ERISA §514(c)(2). *See, e.g., Boggs v. Boggs*, 520 U.S. 833 (1997) (the Court made no pretense of applying anything except ordinary conflict preemption analysis); *District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125 (1992); *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504 (1981). ERISA §3 (35), 29 U.S.C. §1002(35), encompasses within the definition of an employee welfare benefit plan the defined pension plan at issue in this case.

q.      As applied to this case, ERISA completely preempts, governs and provides exclusive civil enforcement mechanisms for the Complaint's other seven purported state law causes of action, in addition to the breach of fiduciary duty claim: common-law fraud, negligent misrepresentation, negligence, unjust enrichment, action for monies had and received, violations of the New Jersey Consumer Fraud Act, and

---

equitable relief; "the unavailability of a particular remedy does not undermine ERISA preemption").

violation of the New Jersey Civil RICO statute.  ERISA completely preempts these claims and creates removal jurisdiction because they seek to provide alternate state law enforcement mechanisms for violations of the ERISA statute and regulations allegedly committed in connection with the establishment, implementation, and funding of the Octal 412(i) Plan, including state law remedies for alleged violations of ERISA "prohibited transaction" rules.  29 U.S.C. §§1144(a), 1132(a).  *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54-55 (1987); *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 140 (1990); *Nelv York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 658 (1995); *Farr v. U.S. West Communications, Inc.,* 151 F.3d 908, 913 (9th Cir. 1998), *cert. denied,* 528 U.S. 1116 (2000); *Rutledge, supra.*

    r. The District Courts of the United States have original jurisdiction over and federal law under ERISA controls, actions relating to employee benefit plans, including actions asserting contract or tort claims, or seeking to enforce rights, relating to such plans.  29 U.S.C. §§1132(a), 1132(e)(1), 1144(a); *Pilot Life, supra; Rutledge, supra.*  In this case, ERISA is a "complete preemption" doctrine which displaces all state law claims "relating to" the establishment, implementation, funding, and administration of the Octal 412(i) Plan, including any attempts to artfully plead around the statute.  ERISA supplants the state law claims and remedies with federal claims and remedies.  Where, as here, the state law claims fall within the scope of ERISA's exclusive civil enforcement provisions, courts have held that Congress has ***completely pre-empt[ed]*** such claims.  The courts ***recharacterize*** such claims under ERISA as having been federal claims from the inception, and hence removal of such cases to federal court is proper under 28 U.S.C. §1446(b).  *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65-66 (1987); *Davila, supra; Arana, supra; Tingey v. Pixley-Richards West, Inc.,* 953 F.2d 1124, 1130-31 (9th Cir. 1992); *Rutledge, supra.*

  **5.** **Removal Based on One or More Substantial Federal Questions – Federal Tax Issues – Appearing on the Face of the Complaint:** Second, and

independently, Pension Strategies removes the Action based on one or more additional substantial federal questions – federal tax issues under Code Section 412(i) and related ERISA funding provisions – that appear on the face of the Complaint.  Pension Strategies does not admit the allegations of federal tax law violations, but restates them here only for purposes of establishing removal jurisdiction:

      a.    A case can be removed where, as here, the vindication of a right, even if purportedly created by state law, turns solely on the resolution of a substantial question of federal law that is in dispute between the parties and constitutes an integral element of the claim.

      b.    The Complaint alleges that defendants made purportedly deceptive representations in late 2003 about whether the Octal 412(i) Plan, allegedly funded by "springing cash value" life insurance policies, was "illegal." (Complaint, ¶¶ 37, 47).  It alleges that the IRS has audited the Plan and the Plaintiffs incurred losses including lost deductions, penalties and interest.

      c.    Federal question jurisdiction appears on the Complaint's face and removal is appropriate, in that the Plaintiffs' right to recover under their claims turns exclusively on one or more substantial questions of federal law in dispute between the parties.  Pension Strategies vigorously disputes the interpretation and application of federal tax law, including 26 U.S.C.§412(i), as well as related ERISA provisions, as they pertain to whether Plaintiffs have stated a claim upon which relief can be granted.  The disputes include:

      (1)    The meaning of statements allegedly made by the IRS *before* February of 2004 concerning the taxability of certain elements of 412(i) plans;

      (2)    The meaning of the term "springing cash value" policy, which is not a defined term in the Code, but a term of art used by the IRS.  The parties also dispute whether the policies issued to the Octal 412(i) Plan fit within the meaning of the term;

(3)     The meaning and impact of these pre-2004 IRS statements. Prior to 2004, there were no IRS pronouncements concerning 412(i) plans and the insurance policies issued to fund them.  Plaintiffs assert that the statements made by the IRS after 2004 made the Plan an illegal abusive tax shelter *in 2003*; and

(4)     The meaning of the term "fair market value" as applied to the distribution of life insurance policies by a qualified pension plan to a participant.  While new IRS regulations require that any life insurance contract transferred to a participant by a 412(i) plan be taxed at its "fair market value,"[9] they do not define that term.  Absent statutory guidance, it is for a court to decide the actual meaning of "fair market value" in the context of the federal tax laws and regulations.  That question of federal tax law should properly be resolved by a federal court.

d.     Accordingly, the Complaint's claims that various defendants, in *late 2003*, improperly recommended that Plaintiffs establish the 412(i) plan at issue, despite allegations that the IRS indicated that "springing cash value" life insurance policies were an improper method of funding the plan, necessarily involve an interpretation and application of federal tax law, including 26 U.S.C. §412(i), IRS regulations and guidance, as well as related ERISA funding provisions.  The relevant body of law is entirely federal, and its interpretation and application are properly done by a federal, not state, court.

e.     The parties' dispute over the interpretation and application of this evolving body of law will constitute a significant dispute in this litigation.  As the plain language of the Complaint makes clear, the claims which depend on assertions of federal tax law violations cannot be evaluated without a comprehensive assessment of federal tax law to determine whether the plan at issue involved, as Plaintiffs assert, not only ERISA

---

[9] *See* Value of Life Insurance Contracts When Distributed From a Qualified Retirement Plan, 70 Fed. Reg. 50,967 (Aug. 29, 2005) (to be codified at 26 C.F.R. Part 1).

"prohibited transactions," but also the use of "excessively high premiums" to fund the plan despite alleged warnings from the IRS regarding the tax implications of same.

        f.     If Defendants are correct, Plaintiffs cannot have any valid claim that various Defendants made false assertions about federal tax law in 2003 or at any time thereafter. Consequently, questions of federal tax law are central to this case, and Defendants are entitled to have them resolved in a federal forum.

        g.     Thus, Plaintiffs' purported state law causes of action are not only completely preempted by ERISA; they also "turn on" one or more "substantial federal issue[s]" under the Code, IRS regulations and guidance sufficient to confer subject matter jurisdiction upon this Court under 28 U.S.C. §1331. As a result, removal is proper under 28 U.S.C. §1446(b).

**6.** **Venue:** The United States District Court for the District of New Jersey is the proper venue for this Action because it is the District in which a substantial part of the alleged events or omissions giving rise to the claims occurred, because Plaintiffs are subject to personal jurisdiction in this District, and because this District embraces the place where the Action is pending.

**7.** **Personal Jurisdiction:** Pension Strategies does not concede that any court in the State of New Jersey has proper person jurisdiction over it and reserves the right to seek dismissal of the action on the basis of lack of personal jurisdiction.

WHEREFORE, Pension Strategies, L.L.C. files this Notice of Removal of the Action from the Superior Court, Essex County, New Jersey, in which it is now pending, to the District Court of the United States for the District of New Jersey. There is attached to this Notice, marked **Exhibit A** and incorporated herein by reference, a copy of all pleadings received by Pension Strategies, being only the complaint filed in this case. Moreover, counsel for Defendant Pension Strategies has contacted those other parties defendant that are known to have been served. Defendants Shankman, Harstein and

Economic Concepts have all indicated that they will not object to the removal of this Action.

Pension Strategies is concurrently filing a Notice of Filing of Removal of Civil Action to United States District Court with the Superior Court, Essex County, New Jersey, and is currently serving such Notice on the Plaintiffs.

Dated this 2d day of October, 2013.

                By: /s/ Bennet D. Zurofsky_____
                    Bennet D. Zurofsky
                    17 Academy Street, Suite 1201
                    Newark, New Jersey 07102
                    Attorneys for Defendant Pension Strategies, L.L.C.


                GAMMAGE & BURMHAM, PLC


                By: /s/ James F. Polese_____
                    James F. Polese
                    Two N. Central Avenue, 15th Floor
                    Phoenix, Arizona  85004
                    (Admitted in the State of Arizona )
                    (Application for Admission *Pro Hac Vice* pending)
                    Attorneys for Defendant Pension Strategies, L.L.C.

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b) and the District of New Jersey Electronic Filing Procedures, I certify that the following documents were served via electronic service: NOTICE OF REMOVAL TO U.S. DISTRICT COURT of SUPERIOR COURT OF NEW JERSEY LAW DIVISION: ESSEX COUNTY DOCKET NO: L-6811-1 AND MEMORANDUM IN SUPPORT THEREOF, and FRCP 7.1 DISCLOSURE STATEMENT

TO:

    Arthur "Scott" L. Porter, Jr.
    FISCHER PORTER & THOMAS, P.C.
    180 Sylvan Avenue, 2nd Floor
    Englewood Cliffs, NJ  07632
    Email:  aporter@fpt-law.com

    Dalton D. Harris, III
    The Harris Firm, P.C.
    5050 West Lovers Lane
    Dallas, TX  75209
    email: dalton@lawstop.com
    Attorney for Plaintiff

Dated this 3d day of October, 2013.

                                        By: /s/ Bennet D. Zurofsky____