**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DANI BAR-DAVID, MICHAL BAR-DAVID, and OCTAL CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>ECONOMIC CONCEPTS, INC., KENNETH HARTSTEIN, NATI FINANCIAL, LLC, AMIR ABRAMOV, ARTHUR D. SHANKMAN & CO., ARTHUR D. SHANKMAN, PENSION STRATEGIES, LLC, and DAVID BURKE<br><br>Defendants. | Civil Action No. 13-5885 (KM)(MCA)<br><br>**REPORT AND RECOMMENDATION** |

**ARLEO, U.S.M.J.:**

**THIS MATTER** comes before the Court upon the motion of Plaintiffs Dani Bar-David, Michal Bar-David, and Octal Corporation ("Plaintiffs") to remand the pending action to Superior Court of New Jersey, Essex County. (Dkt. No. 13-1). Defendants Pension Strategies ("Pension Strategies"), Arthur D. Shankman & Co., and Arthur D. Shankman (collectively "Shankman Defendants") oppose this motion. (Dkt. Nos. 18, 21). Pursuant to Local Civil Rule 72.1(a)(2), the Honorable Kevin McNulty, U.S.D.J., referred the Motion to the undersigned for Report and Recommendation. The Court heard oral argument on February 19, 2014. Following the hearing, the Court ordered supplemental briefing on the Motion to Remand. (Dkt. Nos. 51, 52, 53, 54, 55). After considering the papers and oral arguments made in connection with this motion, for the reasons set forth herein, and for good cause shown, this Court respectfully recommends that Plaintiff's Motion to Remand be **GRANTED**.

## I. BACKGROUND

On August 28, 2013, the Plaintiffs filed a Complaint in the Superior Court of New Jersey, Essex County, Law Division. In the Complaint, Plaintiffs generally allege that the Defendants made various misrepresentations and omissions that fraudulently induced them to participate in a defined benefit pension plan under 26 U.S.C. § 412(i) (the "Plan"), to purchase a life insurance policy to fund the Plan, and to continue investing in the Plan year after year. (Dkt. No. 1-1, Compl. ¶¶ 1, 3-6, 10-13). Plaintiffs allege that the Plan was actually an abusive tax shelter, that the IRS disallowed all of the deductions claimed with respect to the funding of the plan, and that Defendants knew or should have known the plan was defective. (Id. at ¶ 10).

Plaintiffs allege that Amir Abramov ("Abramov") handled most of Dani Bar-David's insurance needs, as well as some of his retirement and investment needs. (Id. at ¶ 39). Plaintiffs allege that Arthur D. Shankman individually and on behalf of Shankman & Co., as well as Abramov, solicited Plaintiffs Dani Bar-David and Octal Corporation's participation in the Plan. (Id. at ¶ 40). In addition to the first meeting and until Dani Bar-David implemented the Plan on November 17, 2003, Defendants, Shankman and Abramov, allegedly met with Plaintiffs at Dani Bar-David's office five to six more times to solidify Plaintiffs' participation in the Plan. (Id. at ¶ 41). Plaintiffs allege that Defendants omitted and/or misrepresented material facts to Plaintiffs to induce them into initially participating in the Plan and to continue participating in the Plan year after year. (Id. at ¶ 13). Plaintiffs allege that the Defendants made misrepresentations or misleading statements to Plaintiffs including, but not limited to, the following:

- The Plan was a tax advantaged retirement investment that would provide benefits including a death benefit;
- The Plan would be paid for in five (5) years of contributions;
- The contributions to the Plan are 100% tax deductible;
- The Plan was a safe investment with no risk;

- The Plan was compliant with the Internal Revenue Code and IRS regulations and has been approved by the IRS;
- The investment in the Plan was guaranteed to grow at a minimum rate of return of 5%;
- The principal of Plaintiffs' contributions into their 412(i) Plan would always be safe and could never be lost;
- Plaintiffs' investment would grow at a minimum rate of return of 5%;
- A 412(i) plan was like a retirement plan and the contributions were considered by the IRS to be an ordinary and necessary business expense; and
- Plaintiffs could have access to their investment after ten (10) years at which time Plaintiffs could withdraw their money tax-free.

(Id. at ¶¶ 41, 63). Plaintiffs also allege that all Defendants failed to disclose material facts to Plaintiffs, including, but not limited to, the following:

- That a substantial percentage of the money invested by Plaintiffs was used to pay Defendants exorbitant commissions and that virtually all of the money invested during the first year was immediately lost because of this;
- That the Plan would be funded with insurance policies that the IRS considered to be "springing cash value" policies that in turn would cause scrutiny of the Plan by the IRS;
- That the 412(i) Plan was a highly risky investment for the Plaintiffs;
- That the IRS perceived these type of plans as abusive tax shelters and not compliant with IRC 412(i) and that the IRS was not going to allow the deduction to the contribution into these types of plans;
- That the IRS viewed these types of plans as "listed transactions";
- The Plan did not comply with the Internal Revenue Code;
- The contributions to the plan were not tax deductible;
- The Plaintiffs will owe income tax on their contributions to the Plan;
- Contributions paid into a 412(i) plan would not be considered an ordinary and necessary business expense by the IRS;
- The IRS would in all reasonable probability assess substantial penalties and interest.

(Id. at ¶¶ 47, 53, 66).

As to Defendant Pension Strategies, the third party administrator of the Plan, Plaintiffs allege that from its inception, Pension Strategies knew or should have known that the Plan was defective when adopted, and that the deductions Plaintiffs claimed on the Octal corporate tax returns would be disallowed. (Id. at ¶¶ 51-52). Plaintiffs also claim that Pension Strategies knew

of certain material facts regarding the Plan and intentionally failed to disclose them to Plaintiffs. (Id. at ¶ 53). Plaintiffs allege that had they been fully informed about the features of the Plan that they would not have participated in it. (Id. at ¶¶ 47-48). However, as a result of their participation in the Plan, Plaintiffs were audited by the IRS and issued deficiency notices. (Id. at ¶ 56). Plaintiffs allege that the IRS assessed various back taxes, penalties, and interest against Octal Corporation for the years 2006 and 2007. (Id. at ¶¶ 54-58).

Plaintiffs brought this action in New Jersey naming as Defendants all of the participants in the allegedly fraudulent scheme for the misrepresentations and omissions that induced them to initially participate in the Plan and to continue participating in the Plan year after year. (Id. at ¶ 13). Plaintiffs assert claims against all the Defendants for: (1) fraud; (2) negligent misrepresentations; (3) breach of fiduciary duty; (4) negligence; (5) unjust enrichment; (6) money had and money received; (7) violation of the New Jersey Consumer Fraud Act; (8) violation of New Jersey RICO Act; (9) breach of contract; and (10) breach of the duty of good faith and fair dealing. (Id. at ¶¶ 62-102).

On October 3, 2013, Defendant Pension Strategies filed a Notice of Removal contending, inter alia, that the action arises under, and asserts claims falling within the scope of, the exclusive civil enforcement provisions of ERISA and that the action poses one or more substantial federal questions, involving the federal tax laws and related ERISA provisions. (Dkt. No. 1, Notice of Removal, at ¶ 3). Subsequently, Defendant Pension Strategies filed a Motion to Dismiss for lack of jurisdiction and failure to state a claim. (Dkt. No. 9). On November 1, 2013, Plaintiffs filed a Motion to Remand contending that the action should be remanded because the claims are predominately pre-investment fraud type claims and are not preempted by ERISA. (Dkt. No. 13).

The Court heard oral argument on February 19, 2014 and ordered supplemental briefing on the motion.

## II. DISCUSSION

A district court has subject matter jurisdiction to hear claims "arising under the Constitution, laws, or treaties of the United States," pursuant to 28 U.S.C. § 1331. A claim brought in state court may be removed to federal court under 28 U.S.C. § 1441. A party may seek to remand a civil action back to state court based on an alleged defect in the removal procedure, or lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). A party opposing remand must show that removal was proper. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085 (1991). In deciding a motion to remand, the court must resolve any factual dispute in favor of remand. Entrekin v. Kisher Scientific, Inc., 146 F. Supp. 2d 594, 604 (3d Cir. 2001).

As a threshold matter, the Court must decide the narrow issue of whether a pension benefit plan that, at all times, has only covered the sole owner of a corporation but contemplated the potential participation of additional employees is governed by ERISA. Plaintiff Dani Bar-David alleges that the Plan cannot qualify as an "employee benefit plan" under ERISA because he was sole proprietor of Octal Corporation, the sole participant in the Plan, and neither he nor his spouse was considered an "employee" within the meaning of ERISA. Defendant Pension Strategies contends that the language of the Plan clearly envisions that employees other than the owner of Octal could and would become participants in the Plan and that the Plan would be governed by ERISA. The Shankman Defendants similarly contend that the Plan is governed by ERISA since Octal employees had a right to participate in the Plan.

ERISA covers two kinds of employee benefit plans: employee welfare benefit plans and employee pension benefit plans. See 29 U.S.C. §§ 1002(1), 1002(2). The Secretary of Labor has issued regulations clarifying the definitions contained in § 1002. See 29 C.F.R. 2510.3-3. The term "employee benefit plan" is defined and clarified in 29 C.F.R. § 2510:3-3. Section 2510:3-3(a) states that ERISA Title I protections only apply to "employee benefit plans." 29 C.F.R. § 2510:3-3(a). The language of § 2510-3.3(a) states that "plans without employees" are not "employee benefit plans" and will not be covered by ERISA Title I. Section 2510.3-3(c)(1) then explains that an individual and his or her spouse who wholly own a business are not employees for purposes of this section. Therefore, any plan that has as its only participant a sole owner and his or her spouse, is a "plan without employees" and does not qualify for Title I ERISA coverage. A plan that includes at least one employee in addition to the sole owner, however, will be covered by Title I ERISA coverage. This interpretation has been adopted by various courts. See, e.g., Matinchek v. John Alden Life Ins. Co., 93 F.3d 96 (3d Cir. 1996); Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 294 n.6 (5th Cir. 1999) ("[A] plan must have employees besides the owners to qualify as an ERISA plan."); Bates v. Provident Life & Accident Life Ins. Co., 596 F. Supp. 2d 1054 (E.D. Mich. 2009) (holding that although the insurance policy was initially governed by ERISA that when Plaintiff became the sole participant and sole shareholder is became a "plan without employees" and was no longer subject to ERISA's requirements); Meiszner v. Suburban Bank & Trust Co., 397 F. Supp. 2d 952, 955 (N.D. Ill. 2005) (same).

The Third Circuit in Matinchek v. John Alden Life Ins. Co., 93 F.3d 96 (3d Cir. 1996), addressed whether an employee welfare benefit plan was governed by ERISA and held "that an insurance coverage plan covering only a sole business owner and his or her [spouse] cannot qualify as an 'employee welfare benefit plan' under ERISA." Id. at 97; but see Leckey v. Stefano, 263

F.3d 267, 270 (3d Cir. 2001) (holding the plans were governed by ERISA as each had at least one employee-participant). The Court noted that "[a]t least five courts of appeal have similarly recognized that ERISA does not govern a 'plan' that is merely an insurance policy under which the only beneficiaries are the company's owners." Matinchek, 93 F.3d at 101 (citations omitted).

In Yates v. Hendon, 541 U.S. 1 (2004), the Supreme Court confirmed this holding in Matinchek.[1] In Yates, the Court explained that "[p]lans that cover only sole owners or partners and their spouses, the regulation instructs, fall outside Title I's domain. Plans coverings working owners and their nonowner employee's fall entirely within ERISA's compass." Id. at 21 (internal citations and footnotes omitted); Leonard v. Educators Mutual Life Ins. Co., 620 F. Supp. 2d 654, 663 (E.D. Pa. 2007) (explaining how the Supreme Court confirmed the Matinchek holding in part).

As previously mentioned, the narrow issue in this case is whether a pension benefit plan that, at all times, only covered an owner but contemplated the participation of additional employees is governed by ERISA. Defendants, without citing any case law or statutory support, contend that the intent and language of the Plan clearly envisions that employees other than the owner of Octal could become participants in the Plan, which makes the plan subject to ERISA. Matinchek and its progeny, however, make clear that any plan that has as its only participant a sole owner and his or her spouse, is a "plan without employees" and does not qualify for Title I ERISA coverage. The Court finds that this interpretation is consistent with the wording in § 2510.3-3 which states that

[1] Portions of the Third Circuit's discussion in Matinchek are arguably overruled by the Supreme Court's decision in Yates, 541 U.S. 1. For instance, the Third Circuit stated, "Congress clearly intended 'employer' and 'employee' to be mutually exclusive definitions under ERISA." Matinchek, 93 F.3d at 101. In Yates, however, the Court held that working owners could be participants in employee benefit plans where there were non-employer participants in the plan. Yates, 541 U.S. at 16 (stating "a working owner can wear two hats, as an employer and employee"). Matinchek's relevant holding that a plan only covering a sole owner and his or her spouse is not an ERISA plan remains intact. Yates, 541 U.S. at 21. See also Leonard, 620 F. Supp. 2d at 663 n.10 (explaining how portions of Matinchek were overruled by Yates).

"the term 'employee benefit plan' shall not include any plan . . . under which no employees are participants covered under the plan." 29 C.F.R. § 2510.3-3(b). Section 2510.3-3(c)(1) explains that an individual and his or her spouse who wholly own a business are not employees for purposes of this section. ERISA status should not rise and fall on the possibility of an employee's participation in a plan, but on the reality of who is actually covered by the plan.

It is undisputed that Dani Bar-David is the sole owner of Octal Corporation and the only participant in the Plan. While Octal Corporation had other employees working for the company, none of them ever participated in the Plan due to ineligibility or apparent waiver. Thus, regardless of how the Plan was initially set up, the only evidence before the Court is that Bar-David was the only participant the Plan has ever had.[2] Accordingly, the Court finds that the Plan is a "plan without employees" and is not an employee pension benefit plan governed by ERISA. Because ERISA does not govern the Plan at issue in this case, the Court is without federal subject matter jurisdiction and respectfully recommends that Plaintiff's motion to remand be granted.

---

[2] There is case law that discusses when to assess ERISA qualification for pension plans and welfare benefit plans. See In re Stern, 345 F.3d 1036, 1041 (9th Cir. 2003), cert. denied, 541 U.S. 936 (2004). While this Court is not bound by a decision from another Circuit, its persuasiveness is stronger when considering ERISA-related issues. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 55-56 (1987) (quoting ERISA legislative history which revealed a congressional intention, via enactment of ERISA's pre-emption term, to ensure national uniformity of regulation, predictability and consistency of decisions); Matinchek, 93 F.3d at 101. In In re Stern, the Court explained that "we are instructed to assess ERISA qualification for a pension plan by gauging whether there is at least one extant employee beneficiary." In re Stern, 345 F.3d at 1041 (citing In re Lowenschuss, 171 F.3d 673, 680 (9th Cir. 1999), cert. denied, 528 U.S. 877 (1999)). The Court explained that this assessment should be made based on the plan's composition at the time of the events in question in the action before the court, as opposed to at the plan's inception. Id. (emphasis added). To the contrary, ERISA qualification of welfare benefit plans are determined at the time the plan is established, regardless of whether the plan participants change. Id. (citing Peterson v. Am. Life & Health Ins. Co., 48 F.3d 404 (9th Cir. 1995), cert. denied, 516 U.S. 942 (1995)); see, e.g., Leonard, 620 F. Supp. 2d at 665. Here, regardless of when we look at the composition of the Plan, it is undisputed that the only participant that the Plan has ever had is Dani Bar-David. The Plan never had any other employee beneficiaries.

## III. CONCLUSION

Having considered the parties' written submissions, oral arguments, and for good cause shown, it is respectfully recommended that Plaintiff's Motion to Remand be **GRANTED**.

Date: September 4, 2014

**MADELINE COX ARLEO**
**United States Magistrate Judge**

Cc: Judge Kevin McNulty, U.S.D.J.
All Parties
Clerk's Office
File