**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **DANI BAR-DAVID, MICHAL BAR-DAVID, and OCTAL CORPORATION,** | : | |
| | : | Civ. No. 2:13-5885 (KM) (MCA) |
| **Plaintiff,** | : | |
| **v.** | : | **OPINION** |
| **ECONOMIC CONCEPTS, INC., KENNETH HARTSTEIN, NATI FINANCIAL, LLC, AMIR ABRAMOV, ARTHUR D. SHANKMAN & CO., ARTHUR D. SHANKMAN, PENSION STRATEGIES, LLC, and DAVID BURKE,** | : : : : : | |
| **Defendants.** | : | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the court on the Report and Recommendation ("R&R") (ECF No. 57) of Hon. Madeline C. Arleo, United States Magistrate Judge, recommending that the Plaintiffs' motion to remand this action to State court (ECF No. 13-1) be granted. For the reasons set forth below, the R&R will be adopted, and the motion to remand will be **granted**.

## I.    BACKGROUND

Plaintiffs Dani Bar-David, Michal Bar-David, and Octal Corporation (collectively "Bar-David") allege that Defendants[1] fraudulently induced Bar-David to set up and continue to fund a defined benefit pension plan ("Plan") by misrepresenting and omitting material facts about the legal status of such a plan under 26 U.S.C. § 412(i). (Compl. at ¶¶ 1, 3-6, 10-13, ECF No. 1–Exhibit

---

[1] To clarify, Bar-David brought this against the following defendants: Economic Concepts, Inc., Kenneth Hartstein, Nati Financial, LLC, Amir Abramov, Arthur D. Shankman & Co., Arthur D. Shankman, Pension Strategies, LLC, and David Burke. Only Arthur D. Shankman & Co., Arthur D. Shankman, and Pension Strategies, LLC oppose Bar-David's motion to remand.

1

A). Bar-David alleges that, contrary to Defendants' misrepresentations, the Plan was an abusive tax shelter that was not was compliant with the Internal Revenue Code (IRC) and Internal Revenue Service (IRS) regulations and therefore did not qualify as a tax deductible and safe investment. (*Id.* at ¶ 10). Bar-David further alleges that Defendants knew or should have known that the Plan did not comply with the IRC. Bar-David alleges that after an IRS audit revealed the Plan's non-compliance with the tax code, Bar-David was forced to pay back taxes, penalties, and interest. (*Id.* at ¶¶ 54-58).

The Complaint alleges that Defendant Amir Abramov ("Abramov") gave Dani Bar-David insurance, retirement, and investment advice, and first suggested that Dani Bar-David meet with Arthur D. Shankman, an attorney and financial planning expert. (*Id.* at ¶ 39). Shankman, holding himself out as an expert in 412(i) plans, became Dani Bar-David's financial adviser. (*Id.* at ¶ 40). After a series of meetings, Abramov and Shankman allegedly induced Dani Bar-David to participate in the Plan. (*Id.* at ¶¶ 40, 41).

During those meetings, Bar-David alleges, Shankman, individually and on behalf of Arthur D. Shankman & Co. (collectively "Shankman") and Abramov made, *inter alia*, the following misrepresentations to Bar-David:

- The Plan was a tax advantaged retirement investment that would provide benefits including a death benefit;
- The Plan would be paid for in five (5) years of contributions;
- The contributions to the Plan are 100% tax deductible;
- The Plan was a safe investment with no risk;
- The Plan was compliant with the Internal Revenue Code and IRS regulations and has been approved by the IRS;
- The investment in the Plan was guaranteed to grow at a minimum rate of return of 5%;
- The principal of Plaintiffs' contributions into their 412(i) Plan would always be safe and could never be lost;
- Plaintiffs' investment would grow at a minimum rate of return of 5%;
- A 412(i) plan was like a retirement plan and the contributions were considered by the IRS to be an ordinary and necessary business expense; and
- Plaintiffs could have access to their investment after ten (10) years at which time Plaintiffs could withdraw their money tax-free.

2

(R&R at 2-3, citing Compl. at ¶¶ 41, 63). Bar-David further alleges that Abramov and Shankman fraudulently omitted the following in their representations of the Plan:

- That a substantial percentage of the money invested by Plaintiffs was used to pay [Defendants'] exorbitant commissions and that virtually all of the money invested during the first year was immediately lost because of this;
- That the Plan would be funded with insurance policies that the IRS considered to be "springing cash value" policies that in turn would cause scrutiny of the Plan by the IRS;
- That the 412(i) Plan was a highly risky investment for the Plaintiffs;
- That the IRS perceived these type of plans as abusive tax shelters and not compliant with IRC 412(i) and that the IRS was not going to allow the deduction to the contribution into these types of plans;
- That the IRS viewed these types of plans as "listed transactions";
- The Plan did not comply with the Internal Revenue Code;
- The contributions to the plan were not tax deductible;
- The Plaintiffs will owe income tax on their contributions to the Plan;
- Contributions paid into a 412(i) plan would not be considered an ordinary and necessary business expense by the IRS;
- The IRS would in all reasonable probability assess substantial penalties and interest.

(R&R at 3, citing Compl. at ¶¶ 47, 53, 66).

Bar-David also alleges that Pension Strategies, LCC ("Pension Strategies"), the third-party administrator of the Plan, knew or should have known material facts about the Plan that Pension Strategies failed to disclose. (Compl. at ¶¶ 51-53).

Bar-David filed this Complaint on August 28, 2013, in Superior Court in Essex County, New Jersey, asserting claims against all Defendants for: 1) fraud, 2) negligent misrepresentation; 3) breach of fiduciary duty; 4) negligence; 5) unjust enrichment; 6) money had and money received; 7) violation of the New Jersey Consumer Fraud Act; 8) violation of the New Jersey RICO Act; 9)

breach of contract; and 10) breach of the duty of good faith and fair dealing. (R&R at 4; Compl. at ¶¶ 62-101).

Pension Strategies then removed the action to this Court on October 3, 2013, asserting, *inter alia*, that: 1) the Employee Retirement Income Security Act of 1974 (ERISA) preempts Bar-David's state law claims, and 2) federal tax questions appear on the face of the Complaint. (ECF No. 1). Bar-David then moved to remand the action to state court, asserting that this federal court did not have subject matter jurisdiction over the action. (ECF No. 13). Only defendants Pension Strategies and Shankman opposed Bar-David's motion to remand. (ECF Nos. 18, 21).

Magistrate Judge Arleo issued a Report and Recommendation, recommending that the Court grant the motion to remand because the prerequisites of federal question jurisdiction did not appear on the face of the Complaint. *See* 28 U.S.C. § 1331. (ECF No. 57). She reasoned, soundly, that the Plan did not qualify as an ERISA plan, and therefore that ERISA preemption did not apply. Judge Arleo did not need to carry her analysis any further to establish that federal court jurisdiction was not appropriate.

Pension Strategies and Shankman objected to the R&R, arguing that Judge Arleo's ERISA analysis was flawed and that she did not address their arguments that federal question jurisdiction arose from federal tax issues appearing on the face of the Complaint. (ECF Nos. 58, 59).

Based on the objections of Pension Strategies and Shankman, I now address the issues of whether ERISA preemption applies and whether potential federal tax issues warrant this court's exercising federal question jurisdiction over the case pursuant to 28 U.S.C. § 1331. For the reasons set forth below, I find that the Court does not have subject matter jurisdiction, and remand the case to state court.

## II.   DISCUSSION
### a.  Removal and remand standards

Pursuant to the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed by the defendants to the appropriate district court where the action is pending. 28 U.S.C. §1441(a). Removal is not appropriate if the case does not fall within the district court's original federal question jurisdiction and the parties are not diverse. *See U.S. Express Lines*

*Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 8 (1983)). The party that asserts jurisdiction bears the burden of showing at all stages of the litigation that subject matter jurisdiction is proper in the federal court. *Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

The Third Circuit has cautioned that 28 U.S.C. § 1441 must be strictly construed against removal. *Samuel–Bassett*, 357 F.3d at 396, 403 (citing *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). To that end, all doubts should be resolved in favor of remand. *Id.*; *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985) (internal citations omitted); *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). Accordingly, "[w]e presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Phila. Fed'n of Teachers, Am. Fed'n of Teachers, Local 3, ALF-CIO v. Ridge*, 150 F.3d 319, 323 (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)).

A party may object to a Magistrate Judge's report and recommendation within 14 days of being served with a copy of the recommended disposition. L. Civ. R. 72.1(c)(2); Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). The district court "shall make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." L. Civ. R. 72.1(c)(2); 28 U.S.C. § 636(b)(1). *See, e.g.*, *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (Section 636(b)(1) requires district courts to review *de novo* those portions of the report or specific findings to which objection is made, unless the objection is not timely or specific); *United States v. Lightman*, 988 F. Supp. 448, 457 (D.N.J. 1997). The district court may consider the record developed before the Magistrate Judge, but may also receive further evidence. Fed. R. Civ. P. 72(b)(3); L. Civ. R. 72.1(c)(2).

### b. Federal question jurisdiction

Under the well-pleaded complaint rule, a cause of action "arises under" federal law, and removal is proper, only if there is a federal question presented on the face of the plaintiff's properly pleaded complaint. *Dukes v. U.S. Healthcare*, 57 F.3d 350, 353 (3d Cir. 1995) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-12 (1983)). Bar-David's Complaint facially asserts only state law causes of action. Pension Strategies and Shankman argue, however, that Bar-David's state law claims are completely

preempted by ERISA, and that federal tax issues give rise to federal question jurisdiction under 28 U.S.C. § 1331.

### i. ERISA preemption

The complete preemption doctrine is an exception to the well-pleaded complaint rule: "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Dukes*, 57 F.3d at 354 (citing same); *see generally Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 309-13 (3d Cir. 1994) (discussing the Court's complete-preemption jurisprudence). The complete preemption doctrine applies when

> the pre-emptive force of [the federal statutory provision] is so powerful as to displace entirely any state cause of action [addressed by the federal statute]. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [the federal provision].

*Dukes*, 57 F.3d at 354 (quoting *Franchise Tax Bd.*, 463 U.S. at 23). When the federal law completely preempts a state law cause of action, a claim within the scope of that federal law is federal in nature, even if it is pleaded in terms of state law, and it is therefore removable under 28 U.S.C. § 1441. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Although ERISA preemption is broad, it is not all-encompassing. The Supreme Court has "addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Inc. Co.*, 514 U.S. 645, 654 (1995). Thus, even though "[t]he governing text of ERISA is clearly expansive" in prescribing preemption for any state law claims that "relate to any employee benefit plan," the Supreme Court did not extend "relate to" "to the furthest stretch of its indeterminacy." *Id.* at 655 (internal citations and quotations omitted). Specifically, the Supreme Court has repeatedly held that ERISA does not preempt state statutes "of general application that [are] neither directed to ERISA plans nor interfere[] with their administration." *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 277 (3d Cir. 2001).

To determine whether state law claims have some connection to ERISA, courts should "look to the objectives of the ERISA statute as a guide to the

6

scope of the state law that Congress understood would survive, as well as the nature of the effect of the state law on ERISA plans." *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 84 (3d Cir. 2012). Several courts have held that making "fraudulent or misleading statements to induce participation in an ERISA plan" subjects individuals to state law liability. *Id.* The Third Circuit also analyzed ERISA's objectives and explained that pre-plan fraudulent inducement claims are not the sorts of issues ERISA was meant to preempt: "these sorts of claims rest on misrepresentations made about an ERISA plan before that plan's existence. They are not premised on a challenge to the actual administration of the plan." *Id.* at 85.

Contrary to Pension Strategies' assertions that a "state court is ill-equipped to address" the claims in this case (Pension Strategies R&R Obj. at 2, ECF No. 58), the Third Circuit explained that a state court is fully equipped to handle pre-investment fraud claims:

> To the extent that a reviewing court would need to examine the provisions of the plan in considering the claims, it would be only to determine whether the representations made . . . regarding plan structure and benefits were at odds with the plan itself, or with the plaintiffs' understanding of the benefits afforded by the plans. This is not the sort of exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar. To the contrary, that comparison requires only a cursory examination of the plan provisions and turns largely on legal duties generated outside the ERISA context.

*Id.* (internal citations and quotations omitted).

The Third Circuit further explained that because ERISA's objectives did not extend to covering pre-investment fraud, preemption of state law pre-investment fraud claims is inappropriate:

> Nor do we think these claims strike at that area of core ERISA concern—funding, benefits, reporting, and administration—in which the use of state, rather than federal, law threatens to undermine the goals of Congress in enacting ERISA in the first place.

*Id.* (internal citations and quotations omitted).

In this case, Bar-David's claims rest on misrepresentations and omissions made about the Plan before it existed. Although Bar-David also claims that misrepresentations continued after the Plan was in place, these allegations relate to the Plan's status under federal tax law, rather than the Plan's "actual administration." *Id.*; (Compl. at ¶ 13). Bar-David is not suing as a beneficiary of an ERISA plan and does not seek to enforce any rights under any potential ERISA plan.

Instead, Bar-David seeks to enforce duties that Defendants allegedly owe based on attorney-client and fiduciary relationships that existed outside of the Plan. (*Id.* at ¶¶ 39, 40, 50-53). For example, Bar-David claims that Defendants fraudulently misrepresented the tax advantages of the Plan; negligently made false representations in "selling an investment" to Bar-David; breached pre-Plan fiduciary duties by failing to disclose conflicts of interest before giving financial advice; acted as negligent insurance and financial advisors in recommending the Plan; and violated the New Jersey Consumer Fraud and RICO Acts. (*Id.* at ¶¶ 63, 71, 72, 76, 79, 89, 92). All of these claims relate to pre-investment fraud of the type the Third Circuit explicitly stated did not concern ERISA.

Because ERISA's objectives do not extend to the sort of pre-investment fraud Bar-David alleges in the Complaint, ERISA preemption is not appropriate in this case. Having determined that ERISA does not preempt the sorts of claims alleged in the Complaint, I need not reach Judge Arleo's other well-reasoned determination, i.e., that the Plan does not qualify as an ERISA plan.

### ii.  *Federal tax issues*

Pension Strategies and Shankman also invoke federal question jurisdiction on the grounds that Bar-David's Complaint involves complicated questions concerning the federal tax code and fiduciary duties under ERISA. (Shankman Obj. to R&R at 9-10, ECF No. 59; Pension Strategies Obj. to R&R at 1-2, ECF No. 58). Shankman and Pension Strategies' argument that Bar-David's Complaint requires "an in depth analysis of the federal tax code" is not persuasive. (Shankman Obj. to R&R at 10.)

As explained above, the fiduciary duties that Bar-David alleges were breached arose before the implementation of the Plan and exist independent of it. Furthermore, the validity of Bar-David's claims does not depend on an analysis of the federal tax code, but rather on an analysis of Defendants' various representations and omissions regarding the Plan. A New Jersey state

court is perfectly capable of comparing Defendant's representations about the Plan to the Plan's substance, as described in part by IRS Determination Letters about the Plan's status under the federal tax code. (Pension Strategies' Post-Hr'g Br. at 3-4, ECF No. 50). Indeed, this is precisely the inquiry that the Third Circuit deemed "a cursory examination of the plan provisions" that "turns largely on legal duties generated outside the ERISA context." *Nat'l Sec. Sys.*, 700 F.3d at 85. A state court is well equipped to handle this inquiry.

## III.   CONCLUSION

Pension Strategies and Shankman have failed to meet their burden of showing that the Court has subject matter jurisdiction of this case. Federal question jurisdiction is not available because ERISA preemption does not apply, and there are no other claims invoking a federal question. Therefore, removal is not proper pursuant to 28 U.S.C. § 1441. I adopt Judge Arleo's Report and Recommendation. Bar-David's motion to remand (ECF No. 13) is **granted**, and the case is hereby remanded to state court.

An appropriate Order accompanies this Opinion.

Dated: September 22, 2014

**KEVIN MCNULTY**
**United States District Judge**